UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WISCONSIN

KRISTOPHER PAUL TORGERSON,
    Plaintiff,

v.

Case No. 26-cv-64-jdp

BOARD OF REGENTS OF THE
UNIVERSITY OF WISCONSIN SYSTEM,
*in its official capacity;*

UNIVERSITY OF WISCONSIN-MADISON,
*in its official capacity;*

DR. MICHAEL A. STIER, individually and
in his official capacity;

DR. ROBERT F. CORLISS, individually and
in his official capacity;

DR. HART, individually and
in his official capacity;

BARRY E. IRMEN, individually;

JESSICA BLAHNIK, MARATHON COUNTY
MEDICAL EXAMINER, individually;

DOES 1-20,
    Defendants.

### COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF

### PURSUANT TO 42 U.S.C. §§ 1983 AND 1985

*(Demand for Jury Trial)*

### PRELIMINARY STATEMENT

1. This civil rights action seeks compensatory and punitive damages, as well as declaratory and injunctive relief, for the University of Wisconsin System's systemic failure to supervise forensic pathology services provided to Wisconsin counties, and its **deliberate concealment** of documented concerns about the professional conduct and competency of Dr. Michael A. Stier, a UW Professor of Forensic Pathology whose constitutionally deficient autopsy

work has resulted in wrongful convictions—including that of Plaintiff Kristopher Paul Torgerson, who has now spent more than a decade in prison serving a sentence of life without the possibility of parole.

2. Beginning no later than April 2010, UW officials possessed actual knowledge that Dr. Stier's professional conduct was grossly inappropriate, that his autopsy procedures failed to meet national forensic pathology standards, that District Attorneys' offices were able to "predict" his conclusions and manipulate his findings, and that county coroners were actively steering cases away from him. Rather than investigate, discipline, or disclose these concerns, UW officials **deliberately concealed** this information and allowed Dr. Stier to continue performing autopsies in criminal cases—including Plaintiff's case four years later.

3. The evidence of Defendants' misconduct was deliberately concealed and could not have been discovered through reasonable diligence prior to a systematic public records investigation conducted by Emma Jessica Torgerson, Plaintiff's spouse and duly-appointed Power of Attorney, in 2023-2024. An April 8, 2010 internal email from Barry Irmen, Deputy Coroner of Dane County, was explicitly marked "*not for distribution outside of our office*," demonstrating intentional concealment of information that would have revealed Plaintiff's cause of action.

4. Plaintiff has been continuously incarcerated since his arrest in 2014. Under Wisconsin's Open Records Law, Wis. Stat. § 19.31 et seq., incarcerated individuals are effectively barred from making public records requests. Wisconsin law and Department of Corrections policy prohibit inmates from directly requesting public records. As a result, Plaintiff was and remains unable to conduct the public records investigation necessary to discover evidence of Defendants' misconduct.

5. From 2014 through 2022, Plaintiff was represented by appointed counsel in his criminal appeal and post-conviction proceedings. During this period, his attorneys did not conduct any investigation into the University of Wisconsin's institutional knowledge of Dr. Stier's deficiencies, the Rock County complaints, or the internal communications documented herein. In 2022, Plaintiff terminated his relationship with appointed counsel and began representing himself pro se. It was at this time that Emma Jessica Torgerson began conducting systematic public records investigations on his behalf.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, specifically 42 U.S.C. §§ 1983 and 1985 and the Fourth, Fifth, Sixth, and Fourteenth Amendments. *Bell v. Hood*, 327 U.S. 678 (1946).

7. This Court has jurisdiction to issue declaratory relief pursuant to 28 U.S.C. §§ 2201-2202. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1937).

8. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966).

9. Venue is proper in this district under 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendant Board of Regents resides in this district, with principal offices in Madison, Dane County, Wisconsin, and a substantial part of the events giving rise to this action occurred in this district, including the concealment of complaints and internal directives at UW-Madison.

## PARTIES

### A. Plaintiff

10. Plaintiff Kristopher Paul Torgerson is a citizen of the United States currently incarcerated at Stanley Correctional Institution, Wisconsin, following his 2017 conviction for first-degree intentional homicide in Marathon County Circuit Court Case No. 2014CF000860. Plaintiff has been continuously incarcerated since 2014 and is serving a sentence of life without the possibility of parole.

### B. Institutional Defendants

11. Defendant Board of Regents of the University of Wisconsin System is an agency of the State of Wisconsin created pursuant to Wis. Stat. § 36.09. The Board of Regents is the governing body of the University of Wisconsin System and is responsible for the governance, management, and supervision of all UW System institutions, including UW-Madison. The Board is sued in its official capacity for prospective injunctive and declaratory relief pursuant to *Ex parte Young*, 209 U.S. 123 (1908).

12. Defendant University of Wisconsin-Madison is a public university within the University of Wisconsin System. The UW School of Medicine and Public Health employed Dr. Stier as Professor of Forensic Pathology and contracted with Wisconsin counties to provide forensic pathology services. UW-Madison is sued in its official capacity for prospective injunctive and declaratory relief.

### C. Individual Defendants

13. Defendant Dr. Michael A. Stier was at all relevant times a Professor of Forensic Pathology at the UW School of Medicine and Public Health. Dr. Stier performed the autopsy in Plaintiff's case on or about September 21st and 23rd, 2014, and provided expert testimony at trial in 2017. Dr. Stier acted under color of state law while performing forensic autopsies pursuant to contracts between UW and Wisconsin counties, including Marathon County. Dr. Stier is sued in his individual capacity for monetary damages.

14. Defendant Dr. Robert F. Corliss is currently Director of Autopsy at UW Health and was, at all relevant times, a forensic pathologist at UW-Madison. In April 2010, Dr. Corliss was copied on internal email communications documenting concerns about Dr. Stier. Dr. Corliss responded to these communications: "*I agree with all you have written, and I hope to maintain my professional credibility with the DA's office and yours to avoid situations like those in the future.*" Dr. Corliss possessed actual knowledge of Dr. Stier's deficiencies and the concerns of county officials but took no action to address, investigate, or disclose these concerns. Dr. Corliss is sued in his individual capacity.

15. Defendant Dr. Hart was, at all relevant times, Chair of the UW Department of Pathology and Laboratory Medicine. On April 8, 2010, Dr. Hart received a formal written complaint from Rock County Coroner Jenifer L. Keach documenting that coroner's office personnel "*expressed concerns about his moodiness and inappropriate conversations at the autopsies,*" that law enforcement complained about "*Dr. Stier's failure to return their calls,*" and characterized Dr. Stier's conduct as "*grossly inappropriate for a professional representing the UW School of Medicine.*" As Department Chair, Dr. Hart had supervisory authority over Dr. Stier and the duty to investigate and address these complaints. Dr. Hart is sued in his individual capacity.

16. Defendant Barry E. Irmen was, at all relevant times, Deputy Coroner and later Chief Deputy Coroner of Dane County. On April 7-8, 2010, Irmen authored and received emails documenting that prosecutors "*were somewhat able to predict [Dr. Stier's] reaction*" and that District Attorneys' offices were "*going around [the medical examiner's] office... to get what they wanted done, done by an outside pathologist.*" Irmen issued an internal directive stating "*For several reasons, if deputies are comfortable using Dr. Huntington, especially when Dr. Stier is on call, that would be desirable,*" and explicitly marked this email "**not for distribution outside of our office.**" Irmen is sued in his individual capacity for his role in concealing Brady material.

17. Defendant Jessica Blahnik was, at all relevant times, the Marathon County Medical Examiner. Blahnik contracted with UW-Madison and Dr. Stier to perform the autopsy in Plaintiff's case. Upon information and belief, Blahnik had knowledge of or access to the concerns documented in the April 2010 communications but failed to disclose this information to the defense. Blahnik is sued in her individual capacity.

18. Defendants Does 1-20 are individuals whose identities are currently unknown to Plaintiff but who participated in the concealment of evidence regarding Dr. Stier's competency and conduct, failed to supervise forensic pathology services, or possessed information that should have been disclosed to the defense in Plaintiff's case. Plaintiff reserves the right to amend this complaint to identify these defendants upon completion of discovery.

## STATE ACTOR LIABILITY

19. All Defendants acted under color of state law within the meaning of 42 U.S.C. § 1983. *West v. Atkins*, 487 U.S. 42 (1988). Through public records requests to Marathon County in 2023, Plaintiff discovered the autopsy authorization form showing the autopsy was contracted from Marathon County Medical Examiner Jessica Blahnik to Dr. Stier at UW, establishing the contractual relationship that forms the basis for UW's state actor liability.

20. Medical examiner autopsies are governmental functions pursuant to Wisconsin Statute § 979.02. Dr. Stier, performing autopsies pursuant to county contracts, acted under color of state law. The University of Wisconsin's provision of forensic pathology services to Wisconsin counties constitutes a governmental function, and all individuals involved in that function act under color of state law.

21. Defendant Irmen acted under color of state law as Deputy Coroner of Dane County, a position established by Wisconsin Statute § 59.34.

## FACTUAL ALLEGATIONS

### A. The April 2010 Rock County Emails: Direct Evidence of Deliberate Concealment

22. In 2024, through public records requests to Rock County, Dane County, and UW, Plaintiff discovered the April 2010 email communications that form the core of Plaintiff's claims. Prior to this discovery, Plaintiff had no knowledge of these documents and no means of discovering them.

23. On April 7, 2010, Barry E. Irmen, Deputy Coroner of Dane County, wrote to Dr. Robert F. Corliss describing concerns about Dr. Stier's interactions with prosecutors. Irmen stated that prosecutors *"were somewhat able to predict [Dr. Stier's] reaction"* and described how District Attorneys' offices were *"going around [the medical examiner's] office... to get what they wanted done, done by an outside pathologist."*

24. Irmen further wrote: *"To their credit, they asked Dr. Stier, which I somewhat perceive to have been a setup where Dr. Stier is concerned. I think that they were somewhat able to predict his reaction."* This statement demonstrates that Dr. Stier's conclusions could be predicted and potentially manipulated by prosecutors—information that would have been devastating impeachment material and constitutes *Brady* evidence.

25. Dr. Corliss responded to Irmen's email: *"I agree with all you have written, and I hope to maintain my professional credibility with the DA's office and yours to avoid situations like those in the future."* This response demonstrates that Dr. Corliss, a UW forensic pathologist with supervisory responsibilities, had actual knowledge of the concerns about Dr. Stier but chose to maintain appearances rather than address the underlying problems.

26. On April 8, 2010, Irmen sent an internal email stating: *"For several reasons, if deputies are comfortable using Dr. Huntington, especially when Dr. Stier is on call, that would be desirable."* **This email was explicitly marked "not for distribution outside of our office,"** demonstrating conscious, deliberate concealment of information that would be favorable to criminal defendants.

### B. The Rock County Coroner's Formal Complaint to UW Leadership

27. On April 8, 2010, Jenifer L. Keach, Rock County Coroner, sent a formal written complaint to Dr. Hart, Chair of the UW Department of Pathology and Laboratory Medicine. The complaint documented multiple serious concerns about Dr. Stier's professional conduct and competency.

28. Coroner Keach reported that her personnel *"expressed concerns about his moodiness and inappropriate conversations at the autopsies"* and that law enforcement complained about *"Dr. Stier's failure to return their calls"* and *"their concerns about how long his autopsies take."*

29. Coroner Keach characterized Dr. Stier's public conduct as *"grossly inappropriate for a professional representing the UW School of Medicine"* and formally requested a letter of apology from Dr. Stier.

30. Coroner Keach documented that Dr. Stier had "*strong objections to performing the autopsies*" at certain locations and that he "*would determine where he worked.*" She noted that Dr. Stier gave her "four choices: to take my cases to Fond du Lac, Milwaukee, Waukesha or the VA," demonstrating Dr. Stier's refusal to cooperate with county officials in death investigations.

### C. The National Association of Medical Examiners Standards

31. Dr. Fred B. Jordan, President of the National Association of Medical Examiners (NAME), established the forensic pathology standards applicable to suspected child abuse cases. In a letter responding to concerns about autopsy procedures in Wisconsin, Dr. Jordan stated that in suspected child abuse cases, examination "*should require removal of the entire orbital globe for fixation, subsequent dissection, and microscopic examination*" and that "*Failure to perform these procedures... constitutes an incomplete and inadequate examination.*"

32. Dr. Jordan further stated that "*it was imperative and state of the art to require full neck dissections with removal of the tongue in all cases*" and that suspected child abuse cases require "*extensive subcutaneous dissection of all body surfaces, whether they externally show injury or not.*"

33. Dr. Stier's autopsy report in Plaintiff's case stated the "*eyes are sunken without discernible pupillary dimension,*" yet he testified at trial that the victim's "*eyes were missing*"—a material discrepancy between his written findings and his sworn testimony. Upon information and belief, Dr. Stier failed to follow NAME standards for examination of the eyes in Plaintiff's case.

### D. UW's Deliberate Failure to Act Despite Notice

34. Despite receiving the April 2010 formal complaint from Rock County Coroner Keach, and despite the documented concerns circulated among UW personnel, UW took no effective corrective action regarding Dr. Stier.

35. When Dr. Stier performed the autopsy in Plaintiff's case in 2014, **four years had passed** since the formal complaints documented above. When he testified at trial in 2017, **seven years had passed**. At no point did UW disclose these concerns to any party in Plaintiff's case.

36. UW's policies and procedures required supervision and oversight of faculty members. Chapter UWS 4 of the Wisconsin Administrative Code provides procedures for faculty dismissal for cause. Chapter UWS 8 establishes a code of ethics for unclassified staff. Despite having policies that required investigation and potential discipline, UW officials took no action against Dr. Stier.

37. In 2023, through Marathon County public records requests, Plaintiff discovered that thigh tissue samples were sent by Dr. Stier to a laboratory approximately **six days before trial commenced**, outside normal chain of custody procedures and never disclosed to defense counsel. This evidence of improper evidence handling further demonstrates Dr. Stier's pattern of substandard forensic practices.

### E. The Pattern of Institutional Cover-Up

38. The documents obtained through public records requests reveal a pattern of institutional cover-up dating back to at least 2010. This pattern includes:

> (a) Internal directives to steer cases away from Dr. Stier, marked "not for distribution outside of our office";
>
> (b) Documented knowledge among UW personnel that prosecutors could "predict" Dr. Stier's reactions and manipulate his conclusions;
>
> (c) Formal complaints to UW leadership that were not investigated or acted upon;
>
> (d) Concerns about Dr. Stier's professional conduct expressed by county officials across multiple counties;
>
> (e) Failure to disclose any of this information to defendants in criminal cases where Dr. Stier provided forensic testimony.

39. Upon information and belief, additional evidence of the institutional cover-up will be discovered through the discovery process, including communications among UW officials regarding Dr. Stier, any disciplinary actions or investigations that were initiated and suppressed, and any other cases in which Dr. Stier's testimony contributed to convictions.

## **TIMELINESS OF CLAIMS**

40. Plaintiff's claims are timely under the discovery rule. *Wallace v. Kato*, 549 U.S. 384 (2007). The statute of limitations did not begin until Plaintiff discovered both the injury and its cause through the 2023-2024 public records investigation.

41. The statute of limitations was tolled by Defendants' fraudulent concealment. *Bailey v. Glover*, 88 U.S. 342 (1874). The explicit marking of emails as "not for distribution outside of our office" constitutes an affirmative act of concealment sufficient to toll the statute of limitations. *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446 (7th Cir. 1990).

42. Nothing in the trial record, appellate proceedings, or post-conviction proceedings suggested that UW had received complaints about Dr. Stier, that internal directives existed to steer cases away from him, or that concerns existed about prosecutors' ability to predict his reactions. Dr. Stier presented himself at trial as a credentialed Professor of Forensic Pathology.

43. Even with diligent investigation, this information could not have been discovered earlier because: (a) Plaintiff was incarcerated and prohibited from making records requests; (b) the information was deliberately marked as not for external distribution; (c) nothing in the public record suggested its existence; and (d) Plaintiff's appointed counsel failed to investigate.

44. This action is timely filed within six years of discovery. Wis. Stat. § 893.53.

# CLAIMS FOR RELIEF

## COUNT I

### VIOLATION OF DUE PROCESS - BRADY VIOLATION

*(42 U.S.C. § 1983 - Against All Individual Defendants)*

45. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

46. The suppression of evidence favorable to an accused violates due process where the evidence is material to guilt or punishment. *Brady v. Maryland*, 373 U.S. 83 (1963). This duty extends to impeachment evidence. *Giglio v. United States*, 405 U.S. 150 (1972).

47. The April 2010 emails constitute material impeachment evidence that should have been disclosed to Plaintiff. Evidence that Dr. Stier's conclusions were predictable, that prosecutors could manipulate his findings, that county officials found his conduct "grossly inappropriate," and that internal directives existed to steer cases away from him would have been devastating impeachment material.

48. The *Brady* duty extends to all state actors who possess favorable evidence, not merely prosecutors. *Kyles v. Whitley*, 514 U.S. 419 (1995). Defendants possessed *Brady* material and failed to disclose it.

49. The evidence was material because there is a reasonable probability that, had it been disclosed, the result of the proceeding would have been different. *Strickler v. Greene*, 527 U.S. 263 (1999).

## COUNT II

### VIOLATION OF RIGHT TO FAIR TRIAL - SIXTH AMENDMENT

*(42 U.S.C. § 1983 - Against All Individual Defendants)*

50. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

51. The Sixth and Fourteenth Amendments guarantee criminal defendants the right to effective cross-examination of adverse witnesses. *Davis v. Alaska*, 415 U.S. 308 (1974). Defendants' concealment of the April 2010 communications deprived Plaintiff of his constitutional right to effectively impeach Dr. Stier.

52. Dr. Stier was a critical witness for the prosecution. His testimony regarding the cause and manner of death was essential to the State's case. Had Plaintiff possessed the impeachment evidence, he could have challenged Dr. Stier's credibility, demonstrated a pattern of inappropriate conduct, and shown that prosecutors could predict and potentially manipulate his conclusions.

## COUNT III

### SUPERVISORY LIABILITY - DELIBERATE INDIFFERENCE

*(42 U.S.C. § 1983 - Against Dr. Hart, Dr. Corliss, and Does 1-20)*

53. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

54. Supervisory officials may be liable under § 1983 for their own acts of deliberate indifference that cause constitutional violations. *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011); *City of Canton v. Harris*, 489 U.S. 378 (1989).

55. Dr. Hart, as Chair of the Department of Pathology and Laboratory Medicine, received a formal written complaint about Dr. Stier and had actual knowledge of his deficiencies. Dr. Hart had the authority and duty to investigate, discipline, or remove Dr. Stier but failed to do so.

56. Dr. Corliss, as a senior forensic pathologist with supervisory responsibilities, had actual knowledge of concerns about Dr. Stier and agreed with those concerns in writing but took no action to address them.

57. The failure of these supervisors to act despite actual knowledge of Dr. Stier's deficiencies constitutes deliberate indifference to the constitutional rights of criminal defendants.

## COUNT IV

## CONSPIRACY TO DEPRIVE CIVIL RIGHTS

*(42 U.S.C. §§ 1983 & 1985 - Against All Individual Defendants)*

58. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

59. A conspiracy to deprive individuals of their constitutional rights is actionable under § 1983 and § 1985. *Griffin v. Breckenridge*, 403 U.S. 88 (1971).

60. The April 2010 email communications demonstrate coordination among Defendants to conceal information unfavorable to Dr. Stier and unfavorable to prosecutors' ability to obtain convictions. The explicit directive that communications were "not for distribution outside of our office" constitutes an overt act in furtherance of the conspiracy.

61. The conspiracy deprived Plaintiff of his constitutional rights to due process, a fair trial, and effective assistance of counsel.

## COUNT V

## DECLARATORY JUDGMENT

*(28 U.S.C. §§ 2201-2202 - Against Board of Regents and UW-Madison)*

62. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

63. An actual controversy exists between Plaintiff and the institutional Defendants regarding whether UW's policies and practices for supervising forensic pathology services and disclosing relevant information in criminal cases comply with constitutional standards.

64. Plaintiff seeks a declaration that UW's policies and practices violated the constitutional rights of Plaintiff and similarly situated criminal defendants.

## COUNT VI

### INJUNCTIVE RELIEF

*(Ex parte Young - Against Board of Regents and UW-Madison)*

65. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

66. Plaintiff seeks injunctive relief requiring the institutional Defendants to:

> (a) Identify all criminal cases in which Dr. Stier provided forensic testimony;
>
> (b) Disclose the April 2010 communications and any other relevant documents to defendants in those cases;
>
> (c) Notify relevant prosecutors and courts of the issues documented herein;
>
> (d) Implement policies and procedures to ensure that forensic pathology services meet national standards;
>
> (e) Implement policies requiring disclosure of complaints about forensic pathologists to defendants in criminal cases.

## COUNT VII

### NEGLIGENCE

*(State Law - Against All Defendants)*

67. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

68. Defendants owed Plaintiff a duty of care in providing forensic pathology services that would be used in criminal proceedings.

69. Defendants breached this duty by failing to supervise Dr. Stier, failing to address documented concerns about his competency and conduct, failing to ensure his autopsy procedures met national standards, and failing to disclose relevant information.

70. As a direct and proximate result of Defendants' negligence, Plaintiff has suffered damages including wrongful incarceration, loss of liberty, loss of familial relationships, emotional distress, and other damages to be proven at trial.

## COUNT VIII

### FRAUDULENT CONCEALMENT

*(State Law - Against All Individual Defendants)*

71. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

72. Defendants intentionally concealed material facts from Plaintiff, including the April 2010 communications, the formal complaints about Dr. Stier, the internal directives to steer cases away from him, and concerns about prosecutors' ability to predict his conclusions.

73. The explicit directive that communications were "not for distribution outside of our office" proves intentional concealment.

74. Plaintiff justifiably relied on Defendants' silence and was unaware of the concealed information.

75. As a direct and proximate result of Defendants' fraudulent concealment, Plaintiff has suffered damages.

## DAMAGES

76. As a direct and proximate result of Defendants' constitutional violations, Plaintiff has suffered and continues to suffer:

   (a) Loss of liberty from wrongful incarceration for more than ten years and continuing;

   (b) Loss of familial relationships and companionship;

   (c) Severe emotional and psychological distress;

   (d) Loss of income and earning capacity;

   (e) Damage to reputation;

   (f) Other damages to be proven at trial.

77. Plaintiff seeks compensatory damages in an amount to be determined at trial, but estimated to exceed $50,000,000.

78. Defendants' conduct was willful, malicious, and undertaken with reckless disregard for Plaintiff's constitutional rights, warranting an award of punitive damages in an amount sufficient to punish Defendants and deter similar conduct in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kristopher Paul Torgerson respectfully requests that this Court:

   A. Enter judgment in favor of Plaintiff and against Defendants on all claims;

   B. Award compensatory damages in an amount to be determined at trial;

   C. Award punitive damages against the individual Defendants;

   D. Issue a declaratory judgment that Defendants violated Plaintiff's constitutional rights;

   E. Issue injunctive relief as described herein;

F. Award costs of suit and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988;

G. Award pre-judgment and post-judgment interest as permitted by law;

H. Grant such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

_/s/_

KRISTOPHER PAUL TORGERSON, Pro Se
Stanley Correctional Institution
100 Corrections Drive
Stanley, WI 54768

Dated: 19th January 2026

## VERIFICATION

I, Kristopher Paul Torgerson, declare under penalty of perjury under the laws of the United States of America and the State of Wisconsin that the foregoing is true and correct to the best of my knowledge, information, and belief.

_/s/_

KRISTOPHER PAUL TORGERSON

Dated: 19th January 2026