IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

KRISTOPHER PAUL TORGERSON,

Plaintiff,

v.                                                    OPINION and ORDER

DR. MICHAEL A. STIER and DR. ROBERT F.                      26-cv-64-jdp
CORLISS,

Defendants.

---

In response to a screening order, plaintiff Kristopher Paul Torgerson brings an amended complaint, alleging that a forensic pathologist, defendant Dr. Michael A. Stier, gave false testimony in his state criminal prosecution, and that Stier's supervisor, defendant Dr. Robert F. Corliss, failed to act on complaints about Stier's performance. Torgerson, who is incarcerated at Stanley Correctional Institution, seeks relief under 42 U.S.C. § 1983. Torgerson is proceeding without counsel.

Torgerson proceeds without prepaying the filing fee, so I must screen the amended complaint under 28 U.S.C. § 1915(e)(2)(B) and dismiss any part of it that is frivolous or malicious, fails to state a plausible claim for relief, or seeks money damages from an immune defendant. I must accept Torgerson's allegations as true and construe them generously, holding the amended complaint to a less stringent standard than one a lawyer drafts. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). I will dismiss the amended complaint with prejudice for failure to state a plausible claim for relief, and I will impose a strike pursuant to 28 U.S.C. § 1915(g).

ALLEGATIONS OF FACT

The allegations of facts are drawn from the amended complaint, as supplemented by the docket sheet in Marathon County case no. 2014CF860. On March 24, 2017, in the '860 case, a jury convicted Torgerson of first-degree intentional homicide and hiding a corpse. On June 8, 2017, the trial court sentenced Torgerson to life in prison.

## A. Stier's involvement in Torgerson's criminal case

Defendant Stier was a professor of forensic pathology at the UW School of Medicine and Public Health. Stier performed forensic autopsies for Wisconsin counties pursuant to contracts between the counties and UW School of Medicine.

In September 2014, the Marathon County medical examiner contracted with UW Health for Stier to perform an autopsy of the victim in Torgerson's criminal case. When Stier conducted the autopsy, he failed to follow certain procedures established by the National Association of Medical Examiners (NAME) for suspected child abuse cases.

Stier's autopsy report described the victim's eyes as "sunken without discernible pupillary dimension." Dkt. 14 ¶ 4. But Stier testified at Torgerson's trial that the victim's "eyes were missing." *Id.*

Six days before Torgerson's trial, Stier sent thigh tissue samples from the victim to a laboratory. The transfer was not conducted through standard chain of custody procedures, and it was not disclosed to Torgerson or his counsel.

## B. Complaints about Stier's conduct before Torgerson's criminal case

In April 2010, more than four years before Stier's involvement in Torgerson's case, the deputy coroner of Dane County, Barry E. Irmen, sent an email in which he raised concerns about Stier's professional conduct and interactions with prosecutors. Irmen wrote that

2

prosecutors could "somewhat" predict Stier's "reactions," and that they were circumventing the medical examiner's office "to get what they wanted done . . . by an outside pathologist." Dkt. 14 ¶ 8. Corliss responded that he agreed with Irmen and hoped to avoid similar situations going forward.

The next day, the Rock County coroner, Jenifer L. Kreach, sent a formal complaint to the chair of the UW Department of Pathology and Laboratory Medicine. Keach reported that her staff had expressed concerns about Stier's moodiness and inappropriate conversations at autopsies, and that law enforcement had described Stier's conduct as "grossly inappropriate." *Id.* ¶ 11.

Corliss did not act on any of the complaints that he received about Stier. Nor did Corliss disclose any of the complaints to Torgerson or his defense counsel.

In 2022, Torgerson's spouse, Emma Torgerson, started making public records requests on his behalf. In 2023, through those requests, Torgerson first discovered the complaints about Stier.

## SCREENING THE AMENDED COMPLAINT

I take Torgerson to bring Fourteenth Amendment due process claims against Stier based on allegations that he: (1) presented false testimony at Torgerson's trial; and (2) failed to disclose impeachment evidence. I also take Torgerson to assert the same claims against Corliss based on allegations that he caused Stier to commit that conduct by failing to act on complaints about his performance. Torgerson alleges that the due process deprivations contributed to his conviction in the '860 case. *See* Dkt. 14 at 7–8. Torgerson seeks damages.

### A. Claim based on false testimony

Torgerson's due process claim based on false testimony has two primary problems. First, this claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *Heck* held that if a plaintiff "seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487. Torgerson's allegation that false testimony led to his conviction at least implies that the conviction is invalid. *See Moore v. Burge*, 771 F.3d 444, 446 (7th Cir. 2014); *see also Mack v. City of Chicago*, 723 F. App'x 374, 376 (7th Cir. 2018) ("'Imply' is not synonymous with 'invalidate.'").

Second, witnesses enjoy absolute immunity from civil liability based on their trial testimony. *Rehberg v. Paulk*, 566 U.S. 356, 367 (2012). Absolute witness immunity bars Torgerson's due process claim against Stier based on false testimony.

Third, Torgerson has not alleged a plausible basis to attribute Stier's false testimony to Corliss. Torgerson alleges that Corliss failed to act on complaints that he was biased in favor of prosecutors and behaved inappropriately during autopsies. Torgerson does not allege that anyone raised a concern about Stier presenting false testimony at trial. Torgerson's allegations don't support even an inference that Corliss's failure to act on those general complaints contributed to Stier's presentation of false testimony in his trial seven years later. "This sort of attenuated theory of causation has no place in § 1983 litigation." *Faulkner v. Litschner*, No. 04-cv-408, 2004 WL 1774642, at *4 (W.D. Wis. July 23, 2004). I will not allow Torgerson to proceed on his due process claim based on false testimony.

**B. Claim based on failure to disclose impeachment evidence**

The basic rule is that the state violates due process if it fails to disclose material exculpatory or impeaching evidence to the defendant in time for him to use it. *See Carvajal v. Dominguez*, 542 F.3d 561, 566 (7th Cir. 2008) (discussing *Brady v. Maryland*, 373 U.S. 83, (1963)). Materiality "in the *Brady* context is the same thing as prejudice." *Harris v. Kuba*, 486 F.3d 1010, 1014 (7th Cir. 2007). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Carvajal*, 542 F.3d at 567. I will assume for screening purposes that Torgerson can bring his due process claim based on failure to disclose impeachment evidence against defendants, state-employed forensic pathologists.

The general idea of the amended complaint is that defendants failed to disclose evidence that Torgerson could have used to impeach Stier's trial testimony. More specifically, Torgerson alleges that Stier failed to: (1) follow certain procedures established by NAME when he performed the victim's autopsy; and (2) disclose that, six days before trial, he sent the victim's thigh tissue samples to a laboratory without following standard procedures. Torgerson does not allege that the thigh tissue samples were entered into evidence at trial; he focuses on Stier's alleged procedural missteps. Torgerson also alleges that Corliss failed to disclose the complaints that he received in April 2010 about Stier.

I will assume for screening purposes that Stier's alleged procedural missteps would be admissible for impeachment. The first misstep is not material because the NAME procedures apply in suspected child abuse cases; the victim in Torgerson's case was an adult. The second misstep is not material because it's implausible that merely pointing out that Stier failed to follow chain-of-custody procedures in sending the thigh tissue samples to a laboratory would

5

have created a reasonable probability of a more favorable outcome at trial. This allegation is purely speculative. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."). Torgerson hasn't plausibly alleged that Stier violated *Brady*, so there is no basis to impute any violation of *Brady* to Corliss based on his failure to act on the complaints about Stier.

Torgerson also faults Corliss for failing to disclosure the April 2010 complaints. But, even if they were admissible, it's implausible that general complaints made seven years earlier related to different autopsies would have created a reasonable probability of a more favorable outcome at trial. Torgerson has not alleged what aspect of Stier's testimony admission of the complaints would have impeached, let alone explained how that testimony contributed to his conviction. I will not allow Torgerson to proceed on his due process claim based on failure to disclose impeachment evidence.

## C. Conclusion

When a plaintiff proceeds without counsel, the court of appeals has cautioned against dismissing his case without giving him a chance to amend the complaint. *Felton v. City of Chicago*, 827 F.3d 632, 636 (7th Cir. 2016). But leave to amend doesn't have to be granted if it's clear that further amendment would be futile. *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013).

Torgerson amended the complaint in response to a prior court order, so he had an opportunity to clarify the factual basis of his claims. Torgerson still failed to state any plausible claim for relief, and his allegations show that further amendment would be futile. I will dismiss the amended complaint with prejudice, and I will impose a strike pursuant to 28 U.S.C. § 1915(g).

MOTION FOR CM/ECF ACCESS AND REASONABLE ACCOMMODATIONS

Torgerson asks me to allow him to file documents using CM/ECF, and to designate his spouse, Emma Torgerson, as his "next friend" and "technical filing assistant" to help him with this task. Dkt. 11 at 1. Torgerson contends that this relief is warranted under the Americans with Disabilities Act because he is deaf. *Id.* at 1, 3–4.

This motion fails for several reasons, three of which warrant brief discussion here. First, Torgerson's motion is an attempt to circumvent the court's orders in a prior case denying his motions to authorize Emma Torgerson to e-file documents on his behalf. *Torgerson v. Blahnik*, 25-cv-334-jdp, Dkt. 16 and Dkt. 23. A key reason for denying that relief—the need to prevent a nonlawyer from litigating this case on behalf of Torgerson—applies equally here. Designating Emma Torgerson as a "next friend" does not diminish that concern. *See Elustra v. Mineo*, 595 F.3d 699, 704 (7th Cir. 2010) ("Normally, representative parties such as next friends may not conduct litigation *pro se*; pleadings may be brought before the court only by parties or their attorney.").

Second, Torgerson bases his requests on the assertion that he's deaf, but there's reason to question this assertion's reliability. This and a contemporaneously filed case appear to be the first the time that Torgerson has said that he's deaf in any case in this court. There's no reference to Torgerson's purported deafness in any of his cases available on Westlaw, on the docket sheet in the '860 case, or in any accessible news article about that case. Nor has Torgerson submitted any medical records to support his assertion that he's deaf. Torgerson's unsubstantiated assertion of deafness does not warrant any relief at this time.

Third, despite the barriers that Torgerson describes, he has litigated several cases in this court. There's no indication that Torgerson's alleged deafness, inability to use CM/ECF, or lack of any other service or accommodation is denying him access to this court.

ORDER

IT IS ORDERED that:

1. Plaintiff Kristopher Paul Torgerson's amended complaint, Dkt. 14, is DISMISSED with prejudice for failure to state a plausible claim for relief.

2. Torgerson's motion for CM/ECF access and reasonable accommodations is DENIED.

3. A strike is to be recorded against Torgerson pursuant to 28 U.S.C. § 1915(g).

4. The clerk of court is directed to enter judgment and close the case.

Entered May 18, 2026.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge